**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THE COUNTY OF LEHIGH,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. _____** |
| **ATLANTIC RICHFIELD COMPANY; E.I. DU PONT DE NEMOURS AND COMPANY; NL INDUSTRIES, INC.; PPG INDUSTRIES, INC.; AND THE SHERWIN-WILLIAMS COMPANY;** | |
| **Defendants.** | |

## NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-TITLED COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442, and 1446, Defendant The Sherwin-Williams Company ("Sherwin-Williams") removes this action from the Court of Common Pleas of Lehigh County to this Court.  All other defendants consent and join in this removal.

## BACKGROUND

1.     In October 2018, Plaintiff the County of Lehigh filed a lawsuit against Sherwin-Williams and other former manufacturers of lead paints or lead pigments in the Court of Common Pleas of Lehigh County, captioned *The County of Lehigh v. Atlantic Richfield Company et al.*, Docket No. 2018-C-2741 (the "State Court Action").  *See* Ex. A, Complaint ("Complaint").  Plaintiff alleges that Sherwin-Williams and other former lead paint or lead pigment manufacturers have caused a public nuisance because of the presence of lead paints and

00323346.1

lead pigments in buildings and properties throughout Lehigh County, even though the manufacture, sale, and promotion of lead paints and lead pigments was legal during the relevant times. *See id.* ¶ 120. The lawsuit contends that all lead-containing paint—even that which is well-maintained and not deemed a hazard under federal or local law—must be abated "from all public and private homes and properties throughout the County." *Id.* ¶ 124.

2.    Plaintiff's definition of the alleged nuisance, which includes "all *public* and private homes and *properties*," encompasses federal government properties located within Lehigh County. *Id.* ¶ 124 (emphasis added).

## GROUNDS FOR REMOVAL

3.    There are two independent grounds for removing this case to federal court. First, this action is removable from this Court under 28 U.S.C. § 1331 because Plaintiff's Complaint presents a substantial and necessary federal question. *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308 (2005). Second, the action is removable under 28 U.S.C. § 1442(a)(1), federal officer removal, because lead-containing paint and lead pigments are present on relevant properties due to the direction and specifications of the federal government.

### A.    Federal Question Jurisdiction is Proper Under 28 U.S.C. § 1331 and *Grable*.

4.    Removal is appropriate under 28 U.S.C. § 1441(a), which states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* This Court, in turn, has original jurisdiction over "all civil actions arising under the Constitution…of the United States." 28 U.S.C. § 1331.

5.      Under *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*, federal question jurisdiction lies over state-law claims that turn on substantial questions of federal law. *See* 545 U.S. at 312.  This Court has federal question jurisdiction over state-law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

6.      Plaintiff brings two separate counts for public nuisance and declaratory judgment. *See* Complaint, ¶¶ 114-29.  Because both counts incorporate by reference all of the paragraphs in the Complaint, both counts necessarily depend on the interpretation and application of substantial questions of federal law.  *Id.* ¶¶ 114, 125.

7.      In paragraph 56 of the Complaint, Plaintiff alleges that "[i]f abatement is determined to be necessary pursuant to the relevant *federal* standards," certain long-term and short-term abatement options may be taken.  Complaint, ¶ 56 (emphasis added).  Plaintiff goes on to state that "[t]he federal standards defining 'paint lead hazard' are drawn broadly and generally include **any** presence of lead-based paint within a home as a hazard in need of some manner of abatement."  *Id.* ¶ 56, n.38 (citing "77 Fed. Reg. 1210-11 (January 5, 2001)").  Plaintiff then quotes from the relevant federal rule, stating that "[t]he purpose of identifying almost all deteriorated lead-based paint as a paint lead hazard is to alert the public to the fact that all deteriorated lead-based paint should be addressed—through use of paint stabilization or interim controls."  *Id.* (citing 77 Fed. Reg. 1210, at 1211).

8.      Plaintiff's invocation of the federal lead hazard standards as the criteria for determining whether properties and buildings containing lead paint or lead pigment are a public nuisance and must be abated raises a substantial federal issue that is necessary to Plaintiff's

claims for public nuisance and declaratory judgment. *Gunn v. Minton*, 568 U.S. 251, 259 (2013). To determine whether the public and private homes and properties throughout the County contain lead hazards that are in need of abatement, the court will need to construe the federal standards alleged by Plaintiff, and apply those federal standards to determine whether a public nuisance exists and abatement is required under those standards. *Grable*, 545 U.S. at 315.

9.      The question of whether the federal standards cited by Plaintiff require abatement of lead paint and pigments in or on the public and private homes and properties throughout the County is disputed. *Grable*, 545 U.S. at 315. Defendants dispute that any lead paint and pigment in or on those properties and buildings within the County is a public nuisance and requires abatement under the federal standards, whereas Plaintiff alleges that the lead paint and pigment in or on those properties and buildings is a public nuisance and require abatement under federal standards, and that Defendants are liable for the public nuisance and abatement. Complaint ¶ 124.

10.     As in *Grable*, the federal issue here is substantial. The construction and application of federal law to determine whether any lead paint and pigment in thousands of properties and buildings is a public nuisance and requires abatement affects not only the parties and properties involved in this action, but other parties and properties in numerous other jurisdictions that may be subject to similar allegations based on federal standards.

11.     Finally, federal jurisdiction over Plaintiff's claims would not disturb any congressionally approved balance of federal and state judicial responsibilities. The federal government has an interest in the consistent construction and application of the federal standards at issue, and jurisdiction over these claims would not "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

12.     Thus, this Court has federal question jurisdiction over this case under 28 U.S.C. § 1331 and *Grable*.

**B.     Federal Officer Removal Is Proper Under 28 U.S.C. § 1442(a)(1).**

13.     Removal of this action is also proper under 28 U.S.C. § 1442(a)(1), federal officer removal.  A private defendant may remove an action under § 1442(a)(1) when it demonstrates that:  (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims.  *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812 (3d Cir. 2016).  As the Third Circuit has held, "the federal officer removal statute is to be 'broadly construed' in favor of a federal forum."  *Id.* at 811 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015), *cert. denied*, 136 S.Ct. 980 (2016) ("*Defender Ass'n*").

14.     Here, to the extent that lead-based paint and lead pigment exists in or on federal buildings and properties within the County, or properties specified for construction by the federal government and subsequently transferred to private ownership, Sherwin-Williams is entitled to the federal contractor defense.

15.     The federal government specified the use of lead-based paint from as early as 1919 and into the 1970s.  *See, e.g.,* Ex. G (P.H. Walker and E.F. Hickson, *Use of United States Government Specification Paint and Paint Materials*, Technologic Papers of the Bureau of Standards, pg. 27-46 (August 20, 1924)) (referencing Circular No. 89 and Circular No. 84).  Within this time period, the federal government directed and recommended the use of lead-based

paint on a variety of public and private buildings, including federal housing projects to support industrial workers, state and municipal school buildings, and low-cost housing.  *See, e.g.,* Ex. H (U.S. Department of Labor, Report of the United States Housing Corporation, Volume I, 1920 (including federal specifications requiring window screen frames "to be delivered primed one coat of white lead paint, and specified to be finished with one coat of same paint by painting contractor at the site" and specifying "white lead paints to be used only for door and window trims, porches, cornices, eaves and other 'trim'"); P.H. Walker Memorandum re: City of New York (September 24, 1928); E.F. Hickson Letter re: Minnesota Board of Education (May 28, 1930); National Bureau of Standards, *Technical Information on Building Materials for Use in the Design of Low-Cost Housing:  Federal Specification Paint Pigments and Mixing Formulas* (Sept. 15, 1936)).

      16.    Sherwin-Williams supplied the federal government with significant quantities of paint products during the time period in which the federal government specified the use of lead-based paint.  During World War I, Sherwin-Williams supplied substantial amounts of coatings for ships and military purposes, and the Council of National Defense estimated that one-sixth of domestic production represented the federal government's requirements for lead.  Ex. I (America's Paint Company:  A History of Sherwin-Williams (1991); American Chemical Industry, *The Chemical Companies*, Vol. III, at 93-95 (Williams Haynes ed. 1949)).  Sherwin-Williams' production of white lead pigments and paints using white lead pigments increased in World War II as a result of the Lend-Lease program and military requirements for paint.  During World War II, "enormous quantities of paint and similar products were supplied to the War and Navy Department and manufacturers of equipment, ammunition and all other military requirements."  Ex. J (W. R. Sieplein, History of Chemical Development in The Sherwin-

Williams Co., pg. 3 (March 1947)); *see also* The Wall Street Journal, *Purely Gossip:  Heard on the Street*, October 31, 1944, pg. 11 (war production accounted for about 30% of Sherwin-Williams total sales volume of $150 million).

17.     Sherwin-Williams and each other defendant satisfies each of the four elements of federal officer removal jurisdiction.  First, as a corporate defendant, it is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  *Reg'l Med. Transport, Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 723-24 (E.D. Pa. 2008) (holding that a corporate defendant was a "person" within the meaning of 28 U.S.C. § 1442(a)(1)).

18.     Second, with respect to Plaintiff's allegations that Sherwin-Williams and the other defendants are responsible for creating a public nuisance on federal properties, including federal housing properties constructed by the federal government and subsequently transferred to private ownership, Sherwin-Williams and the other defendants were "acting under" a federal officer or agency.  The "acting under" requirement is "liberally construed" and covers actions "that involve an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks."  *Papp*, 842 F.3d at 812 (emphasis in original).  As the Third Circuit has held, "[t]he classic case of such assistance" is when the defendant "helped the Government to produce an item that it needed." *Id.* (citing *Defender Ass'n*, 790 F.3d at 468).

19.     Third, Plaintiff's claims rest on acts done "for or relating to" a federal officer or agency.  To the extent that Sherwin-Williams' or other defendants' lead-containing paints or lead pigments are present in or on federal buildings and properties within Lehigh County, or former federal buildings and properties that have been transferred to private ownership, they are present pursuant to federal government direction and specifications, and defendants were "acting under" the direction of federal officers in supplying the lead pigments or lead-containing paints.  *See,*

*e.g.*, *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 399-400 (5th Cir. 1998) (affirming federal officer removal based on defendant's production of "off-the-shelf" product according to government specifications).

20.     Finally, Sherwin-Williams and the other defendants have several colorable federal defenses to Plaintiff's claims.  Courts have imposed "few limitations" on what constitutes a colorable defense, and the defenses need not be "clearly sustainable" to support removal. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 139 (2d Cir. 2008) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

21.     First, Sherwin-Williams and the other defendants are entitled to the "contractor defense," under which a federal contractor cannot be held liable for a state tort if, in the context of the work at issue, "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Papp*, 842 F.3d at 814 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).  Here, Sherwin-Williams and the other defendants supplied any lead-based paint or lead pigments to the federal government for use in or on federal properties or buildings according to federal specifications.

22.     Second, the Fourteenth Amendment of the United States Constitution prohibits Plaintiff and the judiciary of the Commonwealth of Pennsylvania from imposing retroactive and grossly disproportionate liability on Sherwin-Williams and the other defendants for the continued presence of a legally sold product specifically requested by the federal government many decades ago.

23.     Third, the First Amendment of the United States Constitution precludes Plaintiff from attempting to impose liability on Sherwin-Williams' and other defendants' constitutionally protected speech in truthfully advertising a legal product and its constitutionally protected right to join and participate in trade associations.  *See, e.g., 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 504 (1996); *In re Asbestos School Litig.*, 46 F.3d 1284, 1294 (3d Cir. 1994).

24.     Accordingly, Sherwin-Williams is entitled to remove this action pursuant to 28 U.S.C. §1442(a).

25.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims over which it does not have original federal question jurisdiction because they form part of the same case or controversy as those claims over which the Court has original jurisdiction.

## PROCEDURAL COMPLIANCE

26.     The State Court Action was pending before the Court of Common Pleas for Lehigh County.  Because this Court is in the United States District Court for the district and division embracing the place where the original action was filed, it is the appropriate Court for removal under 28 U.S.C. § 1446.

27.     Pursuant to 28 U.S.C. § 1446(a), Sherwin-Williams has attached copies of "all process, pleadings, and orders served upon" Sherwin-Williams following service of the Complaint.  *See* Ex. A.  A copy of this Notice has been served on all parties of record and will be filed with the Clerk of the Court of Common Pleas for Lehigh County.

28.     This Notice of Removal is timely filed by Sherwin-Williams within thirty days of November 14, 2018, the date on which Sherwin-Williams was first served with the Complaint.

29.     All Defendants have consented to the removal of the State Court Action.  The written consent and joinder of all other defendants is attached to this Notice.  Ex. B.  Copies of

all process, pleadings, and orders served upon all other defendants are attached as Exhibits C (Atlantic Richfield Company), D (NL Industries, Inc.), E (E.I. du Pont de Nemours and Company), and F (PPG Industries, Inc.).

WHEREFORE, Sherwin-Williams requests that this action proceed in this Court as a properly removed action.


Dated: November 28, 2018

Respectfully submitted,

_____
William H. Pugh, V., Bar No. 54843
KANE, PUGH, KNOELL,
TROY & KRAMER LLP
510 Swede Street
Norristown, Pennsylvania 19401
Telephone:  (267) 234-1330

Leon F. DeJulius, Jr., Bar No. 90383 (*Pro Hac Vice* Motion to be Filed)
Charles H. Moellenberg, Jr., Bar No. 54740 (*Pro Hac Vice* Motion to be Filed)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone:  (412) 391-3939

Jennifer B. Flannery, Bar No. 74546 (*Pro Hac Vice* Motion to be Filed)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone:  (404) 581-3939

***Attorneys for Defendant***
***The Sherwin-Williams Company***